13-1799-cr
*United States v. Tarantino*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of July, two thousand fifteen.

PRESENT: JOSÉ A. CABRANES,
ROSEMARY S. POOLER,
CHRISTOPHER F. DRONEY,
*Circuit Judges*.

UNITED STATES OF AMERICA,

*Appellee*,

v.  No. 13-1799-cr

CHRISTIAN GEROLD TARANTINO,

*Defendant-Appellant*.

**FOR CHRISTIAN GEROLD TARANTINO:** TODD G. SCHER, Dania Beach, FL.

**FOR UNITED STATES OF AMERICA:** CARRIE N. CAPWELL (James M. Miskiewicz, Peter A. Norling, *on the brief*), Assistant United States Attorneys, *for* Kelly T. Currie, Acting United States Attorney for the Eastern District of New York, Brooklyn, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Joanna Seybert, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **AFFIRMED**.

Defendant Christian Gerold Tarantino appeals from the District Court's April 26, 2013 judgment convicting him, after two jury trials, of willfully endangering the safety of a commercial motor vehicle operator, resulting in the operator's death, in violation of 18 U.S.C. § 33, murder to obstruct justice, in violation of 18 U.S.C. § 1512(a)(1)(C), and conspiracy to commit murder to obstruct justice, in violation of 18 U.S.C. § 1512(k), and sentencing him principally to three concurrent terms of life imprisonment. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

### I. Sufficiency of the Indictment

The District Court properly denied Tarantino's motions to dismiss the indictment. Count one plainly tracked the language of the relevant statute, contained the elements of the offense charged (including the applicable *mens rea* requirement), and fairly informed Tarantino of the charge against him. *See* 18 U.S.C. § 33(a); *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007); *United States v. Frias*, 521 F.3d 229, 235 (2d Cir. 2008) ("Typically, to state an offense, an indictment need only track the language of the statute and, if necessary to apprise the defendant of the nature of the accusation against him, state time and place in approximate terms." (internal quotation marks omitted)). Accordingly, the indictment sufficiently alleged a violation of 18 U.S.C. § 33.

### II. *Fowler v. United States*

Tarantino next argues that the Supreme Court's decision in *Fowler v. United States*, 131 S. Ct. 2045 (2011), requires that we vacate his conviction for the obstruction-of-justice murder of his accomplice, Louis Dorval. We disagree.

In *Fowler*, the Supreme Court held that "where a defendant killed a person with an intent to prevent that person from communicating with law enforcement officers in general but where the defendant did not have federal law enforcement officers (or any specific individuals) particularly in mind . . . . the Government must show that there was a *reasonable likelihood* that a relevant communication would have been made to a federal officer." *Id.* at 2048. Here, however, the evidence showed that Tarantino murdered Dorval to prevent him from communicating specifically with federal law enforcement officers, not "law enforcement officers in general." *Id.* Among other things, just days before his murder, a federal grand jury had indicted Dorval, federal agents had secured a warrant for his arrest, local newspapers had reported widely on the federal investigation, and Dorval had subsequently met with Tarantino. *Fowler* is therefore inapposite and, even if it applied, there was a "reasonable likelihood" that, had Dorval communicated with law enforcement officers, at least one relevant communication would have been made to a federal law enforcement officer. *Id.* at 2052.

Accordingly, the evidence was sufficient to sustain Tarantino's conviction for Dorval's murder, there was no error in the relevant jury instructions, and the District Court did not abuse its discretion in denying Tarantino's motion for a new trial.

### III. Jury Selection

Tarantino next complains that his absence from two court teleconferences—at which jury prescreening on the basis of both hardship and cause took place in the presence of counsel—violated his right to be present at all stages of trial. We conclude that, even assuming Tarantino had a right to be present, Tarantino impliedly waived his right. *See United States v. Gagnon*, 470 U.S. 522, 527–28 (1985). The record reveals that the District Court fully discussed with counsel the process it would undertake for prescreening. Gov't App. 5–6. Then, in the presence of Tarantino, the District Court explicitly directed his counsel to "go through the jury selection questionnaires" with Tarantino in order to "see what his desire would be in terms of the type of jury he'd like to be seated." Gov't App. 12, 19. On March 22, 2011, with Tarantino present and prior to the start of in-person jury selection, both the District Court and one of Tarantino's trial attorneys referenced the court's prior rulings on the questionnaires. Tr. of Voir Dire 8:16–19, 12:17–20, *United States v. Tarantino*, 2:08-cr-655 (E.D.N.Y. Mar. 22, 2011), ECF No. 467. At no time was there any indication that Tarantino was not allowed to attend the prescreening, nor was there any request that he attend. Moreover, at no time before, during, or after trial did Tarantino or his trial counsel object to the procedure detailed by the District Court or to Tarantino's absence at the prescreening, at which counsel was fully present.

On this record, it is apparent that Tarantino waived his right to be present. *See Cohen v. Senkowski*, 290 F.3d 485, 492–93 (2d Cir. 2002); *Tankleff v. Senkowski*, 135 F.3d 235, 247 (2d Cir. 1998) ("Under the circumstances, we think waiver may properly be inferred from the conduct of the defendant and his attorneys."); *see also United States v. Jones*, 381 F.3d 114, 122 (2d Cir. 2004) (finding waiver even though the defendant did not have advance notice of the proceeding in question, as the "defendant could have objected after the alleged violation took place").

### IV. Evidentiary Ruling

"We review a district court's ruling on a motion to suppress for clear error as to the facts and *de novo* on questions of law, and pay special deference to the district court's factual determinations going to witness credibility." *United States v. Jiau*, 734 F.3d 147, 151 (2d Cir. 2013) (citations omitted). We conclude that the District Court properly denied Tarantino's motion to suppress the incriminating audio recording between him and his criminal associate, Vincent Gargiulo. We see no error, much less clear error, in the District Court's finding that Gargiulo did not intercept the communication "for the purpose of committing any criminal or tortious act," so as to render it inadmissible under Title III of the Omnibus Crime Control and Safe Streets Act of 1968. 18 U.S.C. § 2511(2)(d). Although Gargiulo later used the recording for blackmail, it is far from clear

3

that blackmail was his "primary motivation" or "a determinative factor" at the time he made the recording. *United States v. Dale*, 991 F.2d 819, 841 (D.C. Cir. 1993); *see United States v. Cassiere*, 4 F.3d 1006, 1021 (1st Cir. 1993) (applying same standard); *see also Jiau*, 734 F.3d at 152 (assessing intent at the time the recording was made).

We also conclude that the District Court did not abuse its discretion in declining to hold an evidentiary hearing. *See United States v. Getto*, 729 F.3d 221, 226 n.6 (2d Cir. 2013). We note that the District Court specifically afforded Tarantino an opportunity to come forward with additional information in support of his request for a hearing. As the record indicates and as the parties' supplemental letter briefs make clear, Tarantino failed to do so.

## V. Ineffective Assistance of Counsel

Tarantino asserts that he was denied effective assistance of counsel at his first trial because one of his attorneys labored under an actual conflict of interest. It is well established that, "[w]hen faced with a claim for ineffective assistance of counsel on direct appeal, we may: (1) decline to hear the claim, permitting the appellant to raise the issue as part of a subsequent petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255; (2) remand the claim to the district court for necessary factfinding; or (3) decide the claim on the record before us." *United States v. Morris*, 350 F.3d 32, 39 (2d Cir. 2003). The Supreme Court has emphasized that "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance." *Massaro v. United States*, 538 U.S. 500, 504 (2003). Because the District Court failed to develop the record with respect to the alleged conflict, *see United States v. Brown*, 623 F.3d 104, 113 (2d Cir. 2010), we defer to our customary practice, *see United States v. Khedr*, 343 F.3d 96, 100 (2d Cir. 2003), and preserve this issue for collateral review.

## VI. Due Process

Tarantino next contends that the Government violated his due process rights by pursuing inconsistent theories with respect to the murder of Dorval in successive prosecutions. This claim is meritless.[1] The Government consistently argued that Tarantino participated together with others in the murder of Dorval. The fact that some witnesses offered sometimes different and inconsistent accounts of the murder does not, by itself, demonstrate that the Government's theory was inconsistent. Moreover, Tarantino was provided full discovery and was allowed to present any inconsistencies to the jury, which nevertheless found him guilty. *See United States v. Orena*, 32 F.3d

---

[1] Neither this Court nor the Supreme Court has squarely addressed whether the Due Process Clause prohibits the Government from prosecuting defendants based on inconsistent theories. *See Bradshaw v. Stumpf*, 545 U.S. 175, 187–88 (2005); *see also United States v. Boyle*, 283 F. App'x 825, 826 (2d Cir. 2007) (summary order) ("Although we have not yet addressed the issue, other circuits have found that 'the use of inherently factually contradictory theories violates the principles of due process.'" (quoting *Smith v. Groose*, 205 F.3d 1045, 1052 (8th Cir. 2000))), *aff'd on other grounds*, 556 U.S. 938 (2009). Because the evidence demonstrates that the Government did not present inconsistent theories in procuring Tarantino's convictions, we need not address this question.

4

704, 716 (2d Cir. 1994); *United States v. GAF Corp.*, 928 F.2d 1253, 1262 (2d Cir. 1991). On this record, we discern no due process violation.

### VII. Denial of Motion for New Trial

We also conclude that Tarantino has not established that cooperating defendant Scott Mulligan offered perjured testimony regarding the murder of Dorval so as to merit a new trial. *See United States v. Zichettello*, 208 F.3d 72, 102 (2d Cir. 2000); *United States v. Torres*, 128 F.3d 38, 49 (2d Cir. 1997). Again, the fact that Mulligan's testimony regarding Tarantino's account of the murder sometimes differed from other witnesses' accounts—which themselves were internally inconsistent—is insufficient to establish that Mulligan's testimony was false. Accordingly, the District Court acted well within its discretion in denying Tarantino's motion for a new trial. *See United States v. James*, 712 F.3d 79, 107 (2d Cir. 2013).

### VIII. Denial of Motion to Disqualify

Lastly, we conclude that the District Court properly denied Tarantino's motion to disqualify Assistant United States Attorney James Miskiewicz. Tarantino demonstrated neither a "compelling" nor a "legitimate" reason to call AUSA Miskiewicz as a witness and thereby disqualify him. *United States v. Regan*, 103 F.3d 1072, 1083 (2d Cir. 1997) ("A defendant who wishes to call a prosecutor as a witness must demonstrate a compelling and legitimate reason to do so.").

### CONCLUSION

We have considered all of the arguments raised by Tarantino on appeal and find them to be without merit. For the reasons stated above, we **AFFIRM** the District Court's April 26, 2013 judgment.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk